IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

JOHN D. ROGERS                                                                          PLAINTIFF

V.                                                                         CIVIL ACTION NO. 4:18-CV-257-RP

MISSISSIPPI DEPARTMENT OF CORRECTIONS, et al.             DEFENDANTS

## MEMORANDUM OPINION

      John D. Rogers brought this action against the Mississippi Department of Corrections, as well as Pelicia E. Hall and Sean Smith in their individual capacities, seeking damages and other relief as a result of Rogers' termination from employment with the Mississippi Department of Corrections. The defendants now request summary judgment. Docket 47. Rogers has responded in opposition, the defendants have replied, and the matter is ripe for resolution. Having considered the parties' submissions, the court finds the defendants' motion is well taken and should be granted.

### Summary Judgment Standard

      Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

      The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions [of the record] which it

believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323. The nonmoving party must then "go beyond the pleadings" and designate specific facts showing there is a genuine issue for trial. *Id.* at 324. In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when … both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2091, 147 L.Ed.2d 105 (2000).

"Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic arguments do not adequately substitute for specific facts showing a genuine issue for trial." *TIG Ins. Co. v. Sedgwick James of Washington,* 276 F.3d 754 (5th Cir. 2002). "As to materiality, substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2s 202 (1986).

### Facts and Procedural History

The investigative arm of the Mississippi Department of Corrections ("MDOC") is the Corrections Investigation Division ("CID"), which is responsible for investigating security threats, staff misconduct, gang activities, assaults, contraband violations, narcotics violations, escapes, and other matters. CID investigators are law enforcement officers empowered by statute to investigate and enforce all MDOC regulations related to the functions and missions of the department and all laws of the State of Mississippi. Miss. Code Ann. § 47-5-54. At all times relevant to this action, the plaintiff John D. Rogers was the Chief investigator for CID's

investigative unit at the Mississippi State Penitentiary at Parchman, Mississippi ("MSP"). He reported to the CID Director, the defendant Sean Smith, who worked out of MDOC's central office in Jackson, Mississippi.

On November 21, 2016, Rogers received a report of an alleged assault on an inmate by a corrections officer and began an investigation. According to Rogers, while he was interviewing the suspect corrections officer, Superintendent of MSP Earnest Lee, the official responsible for overall operations at the facility, entered the interview room and attempted to interfere with the investigation by taking the suspect with him out of the interview room. The CID investigators who were present objected and a standoff ensued, during which a physical altercation occurred between Superintendent Lee and two of Rogers' CID investigators, including James Bobo. These events led to two separate CID investigations (neither by Rogers) – one concerning the alleged assault on an inmate by a corrections officer, and the other concerning the altercation between Superintendent Lee and the CID investigators.

In early March of 2017, Rogers became concerned that the defendant Pelicia E. Hall, then-Commissioner of MDOC and its top official, intended to cover up the investigation of the assault on the inmate and Superintendent Lee's attempted obstruction. Rogers communicated his concerns to FBI Special Agent Walter Henry, with whom Rogers had a close working relationship. At Agent Henry's request, Rogers provided Agent Henry with a copy of CID's investigative report regarding the assault on the inmate. Rogers did not provide Agent Henry with a copy of CID's investigative report regarding the altercation between Superintendent Lee and CID investigators.

A few days later, on March 13, 2017, Rogers testified in the Circuit Court of Sunflower County, Mississippi at a probable cause hearing on a criminal charge brought by Superintendent

Lee against James Bobo for allegedly assaulting Lee during the subject incident.[1] Called to the witness stand by counsel for Bobo, Rogers testified about his law enforcement background and his role as Chief of investigations at MSP; about receiving the report of an assault on an inmate by a corrections officer; about his investigation and his interview of the suspect corrections officer; about Superintendent Lee's actions that he believed interfered with his investigation; about his knowledge of the altercation between Superintendent Lee and Bobo; and about his understanding that the FBI would be investigating the alleged assault on the inmate.

In early June of 2017, at CID Director Smith's request on behalf of Commissioner Hall, Rogers provided Smith with a synopsis of all of Rogers' communications with the FBI. The synopsis mentioned Rogers' conversation with Agent Henry about the alleged November 21, 2016 assault on an inmate by a corrections officer, as well as Rogers' providing Agent Henry with a copy of the investigative report of the alleged assault.

Rogers was terminated from MDOC on June 24, 2017. CID Director Smith personally delivered the termination letter to Rogers and informed him of his termination. According to Rogers, Smith gave no explanation for the termination.[2]

Rogers appealed his termination to the Mississippi Employees Appeal Board ("MEAB"), which hears state employee appeals of adverse personnel actions. After a hearing, the MEAB concluded that Rogers was improperly terminated because he provided information to the FBI

---

[1] Under Mississippi law, an arrest warrant may not be issued against a law enforcement officer for a criminal act alleged to have occurred during the performance of his official duties unless a circuit court judge first determines at a hearing that adequate probable cause exists for issuance of the warrant. Miss. Code Ann. § 99-3-28.

[2] According to the defendants, there was a history of friction between Rogers and Superintendent Lee which had been addressed without success by top MDOC officials, and Rogers was terminated due to his inability to get along with MSP staff and its impact on the orderly administration of the facility. However, this proffered explanation is irrelevant to the court's ruling and need not be discussed further.

concerning the alleged assault on an inmate by a corrections officer and Superintendent Lee's potential interference with that investigation.[3] The MEAB reversed Rogers' termination and ordered that he be reinstated to his position with all rights and benefits restored, including back pay.

Rogers brought this action asserting a federal claim against Hall and Smith, in their individual capacities, for First Amendment Retaliation, and asserting a Mississippi tort claim against MDOC for retaliation in violation of public policy. The defendants have moved for summary judgment on all of Rogers' claims. The defendants argue, among other things, that Hall and Smith are entitled to qualified immunity and that MDOC is entitled to sovereign immunity. The court agrees.

### First Amendment Retaliation Claim against Hall and Smith

Rogers claims that Hall and Smith violated his First Amendment right to free speech by terminating him in retaliation for providing information about the subject incident to the FBI and for testifying about the incident at Bobo's probable cause hearing. Hall and Smith assert they are entitled to qualified immunity against this claim.

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd,* 563 U.S. 731, 743, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). Qualified immunity shields government officials from money damages unless a plaintiff shows (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Al-Kidd,* 563 U.S. at 735. District courts have discretion to decide which of the two prongs of the

---

[3] Under MEAB precedent, retaliation for reporting a possible criminal act to the FBI or other law enforcement agencies is an improper ground for termination of a state employee.

qualified immunity analysis to tackle first.  *Id.*

Under the second prong, "a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it."  *Plumhoff v. Rickard,* 572 U.S. 765, 778-79, 134 S.Ct. 2012, 188 L.Ed.2d 1056 (2014).  There must be controlling authority – or a robust consensus of persuasive authority – that defines the contours of the right in question with a high degree of particularity.  *Morgan v. Swanson,* 659 F.3d 359, 371-72 (5th Cir. 2011).

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan,* 623 F.3d 249, 253 (5th Cir. 2010).  "When a defendant asserts qualified immunity, the plaintiff has the burden of proving that it is inapplicable."  *Waganfeald v. Gusman,* 674 F.3d 475, 483 (5th Cir. 2012).  The plaintiff has the burden to point out clearly established law.  *Clarkson v. White,* 943 F.3d 988, 993 (5th Cir. 2019).  The plaintiff also bears the burden of "raising a fact issue as to its violation."  *Delaughter v. Woodall,* 909 F.3d 130, 139 (5th Cir. 2018).  In the present case, Rogers has not met his burden of showing that at the time he was fired, it was clearly established that the speech at issue was protected under the First Amendment, and therefore Hall and Smith are entitled to qualified immunity.

"While public employees are not stripped of their First Amendment right to freedom of speech by virtue of their employment, this right is not without exception."  *Hurst v. Lee County, Mississippi,* 764 F.3d 480, 484 (5th Cir. 2014) (citing *Pickering v. Board of Ed. Of Tp. High School Dist. 205, Will County, Illinois,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)).  A four-pronged test is used to determine whether a public employee's speech is entitled to protection from employer discipline.  *Hurst,* 764 F.3d at 484.  "A plaintiff must

show that: (1) he suffered an adverse employment decision; (2) his speech involved a matter of public concern; (3) his interest in speaking outweighed the government defendant's interest in promoting efficiency; and (4) the protected speech motivated the defendant's conduct." *Id.*

As to the second prong, the threshold inquiry is whether the employee spoke as a citizen on a matter of public concern. *Graziosi v. City of Greenville, Mississippi,* 775 F.3d 731, 736 (5th Cir. 2015) (citing *Garcetti v. Ceballos,* 547 U.S. 410, 418, 126 S.Ct. 1951, 189 L.Ed.2d 312 (2006)); *Hurst,* 764 F.3d at 784. A plaintiff must show both that he spoke as a citizen and that his speech addressed a matter of public concern. *Gibson v. Kilpatrick,* 838 F.3d 476, 482 (5th Cir. 2016). Both issues are questions of law that must be decided by the court. *Graziosi,* 775 F.3d at 736.

A public employee is not speaking as a citizen – but rather in his role as an employee – when he makes statements "pursuant to [his] official duties." *Garcetti*, 547 U.S. at 421. "The reason is that when the employee's speech merely relates to the employment relationship as might occur in a private workplace, the public employer should not face constitutional scrutiny for its response." *Johnson v. Halstead,* 916 F.3d 410, 422 (5th Cir. 2019) (citing *Garcetti*, 547 U.S. at 423). The critical question under *Garcetti* is "whether the speech at issue is itself ordinarily within the scope of an employee's duties." *Lane v. Franks*, 573 U.S. 228, 240, 134 S.Ct. 2369, 189 L.Ed.2d 312 (2014). This inquiry is unaffected by "whether or not that speech was specifically 'demanded of him.'" *Anderson v. Valdez,* 845 F.3d 580, 595 (5th Cir. 2016) (quoting *Williams v. Dallas Independent School District,* 480 F.3d 689, 694 (5th Cir. 2007)).

In response to the defendants' summary judgment motion, Rogers concedes that his communications with the FBI regarding the subject incident fell within the scope of his employment duties and are therefore not entitled to First Amendment protection. As such, the

court need be concerned only with Rogers' court testimony.[4]

Rogers argues that at the time he was terminated, it was clearly established that his court testimony was speech as a citizen for First Amendment purposes under *Lane v. Franks*, which held that "the First Amendment protects a public employee who provides truthful sworn testimony, compelled by subpoena, outside the scope of his ordinary job responsibilities." 573 U.S. 228, 238, 134 S.Ct. 2369, 189 L.Ed.2d 312 (2014). "Truthful testimony under oath by a public employee outside the scope of his ordinary job duties is speech as a citizen for First Amendment purposes." *Lane,* 573 U.S. at 238. However, the circumstances in *Lane* and the circumstances of Rogers' testimony are dissimilar.

As the *Lane* court emphasized, Lane, the director of a program at a community college, was compelled by subpoena to testify at the criminal trial of a subordinate he had fired. *Id.* at 233, 235, 238. In the present case, although Rogers states in his brief that he was subpoenaed to testify at Bobo's probable cause hearing, there is no evidence of that in the record. Moreover, in *Lane* it was "undisputed that Lane's ordinary job responsibilities did not include testifying in court proceedings." *Id.* at 238 n.4. The *Lane* court expressly declined to address or state an opinion on "whether truthful sworn testimony would constitute citizen speech under *Garcetti* when given as part of a public employee's job duties." *Id.* As such, unless Rogers comes forward with evidence that testifying at Bobo's probable cause hearing was outside the scope of his ordinary job duties, he has cited no "clearly established" law that his testimony was speech as a citizen, and Hall and Smith are entitled to qualified immunity. Rogers has failed to meet his

---

[4]Rogers argues that the MEAB's factual finding that he was terminated for communicating with the FBI should be given preclusive effect under the doctrine of collateral estoppel. However, because that communication is admittedly not entitled to First Amendment protection, the MEAB's finding is of no benefit to Rogers here and need not be considered. If anything, it would seem to undermine his claim that he was fired because of his court testimony.

burden.

It is axiomatic that a law enforcement officer's job duties ordinarily include testifying in court regarding matters learned or observed during an investigation, as Rogers did in this instance. Courts have noted this. *See, e.g., Morrow v. Dillard,* 412 F.Supp. 494, 500 (S.D. Miss. 1976) (noting general law enforcement duties include testifying in court), *affirmed in part, reversed in part on other grounds,* 580 F.2d 1284 (5th Cir. 1978). The *Lane* court clearly contemplated that there exist jobs that ordinarily entail testifying in court, and the job of law enforcement officer would certainly be one. Even if this were not self-evident, it is Rogers' burden to present evidence to the contrary, and he has not done so.

Rogers cites no evidence that testifying in court generally or testifying in Bobo's criminal proceeding specifically was outside the scope of his ordinary job duties. There is no evidence Rogers was off duty when he testified. The fact Rogers was called to the witness stand by Bobo's counsel and not the prosecutor is not itself evidence the testimony was outside the scope of his ordinary job duties, as law enforcement officers are expected to testify truthfully regarding matters learned or observed during their investigations regardless of whether they are called by the prosecution or by the defense. Again, even if this job expectation were not self-evident, Rogers has presented no evidence to the contrary. The fact that Rogers' testimony included speech about what he believed to be official misconduct -- Superintendent Lee's interference with his investigation -- does not change the result, as "*Garcetti's* rule is a broad one, and it must be applied even where it may lead to a potentially distasteful result in an individual case." *Gibson v. Kilpatrick,* 773 F.3d 661, 671 (5th Cir. 2014).

Because Rogers has failed to meet his burden of showing that his testimony was speech as a citizen under *Garcetti* and *Lane,* he has shown no violation of a clearly established right.

*See Gibson,* 773 F.3d at 672 (holding that where plaintiff adduced insufficient evidence to meet his burden of showing his speech was made as citizen and not in his official capacity, he failed to show his clearly established constitutional rights were violated). Hall and Smith therefore have qualified immunity and are entitled to summary judgment.

### Retaliation in Violation of Public Policy Claim against MDOC

Rogers claims that MDOC terminated him in retaliation for providing information to the FBI about the subject alleged assault on an inmate and Superintendent Lee's interference with his investigation of the assault and for testifying about those matters in court. According to Rogers, this supports a state tort claim against MDOC for violation of public policy under the public policy exception to Mississippi's at-will employment doctrine set forth *McArn v. Allied Bruce-Termininix Company, Inc.,* 626 So. 2d 603 (Miss. 1993). MDOC argues that as an arm of the state, it is immune against this claim under the Eleventh Amendment, which guarantees that "nonconsenting States may not be sued by private individuals in federal court." *Board of Trustees of University of Alabama v. Garrett,* 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). In response, Rogers argues that by its litigation conduct in this case, MDOC has waived its Eleventh Amendment sovereign immunity.[5] The court disagrees.

Generally, the court will find a waiver of sovereign immunity if (1) the state voluntarily invokes federal court jurisdiction, or (2) the state makes a "clear declaration" that it intends to

---

[5] Rogers' First Amended Complaint also contains an allegation that at all relevant times he was a whistleblower under Mississippi's Whistleblower Protection Act ("MWPA"). MDOC asserts sovereign immunity and other defenses against this claim as well. Rogers makes no defense of his MWPA claim in response, and therefore the claim is deemed abandoned. See *Black v. Panola School District,* 461 F.3d 584, 588 n.1 (5th Cir. 2006) (finding plaintiff abandoned claim when she failed to defend it in response to motion to dismiss); *Keenan v. Tejada,* 290 F.3d 252, 262 (5th Cir. 2002) (stating "an issue raised in the complaint but ignored at summary judgment may be deemed waived").

submit itself to federal court jurisdiction. *Meyers ex rel. Benzing v. Texas,* 410 F.3d 236, 241 (5th Cir. 2005). A state's intent to waive its immunity must be "clearly indicated." *Meyers ex rel. Benzing,* 410 F.3d at 244. Rogers argues that MDOC has waived its sovereign immunity in both manners.

Rogers argues that MDOC voluntarily invoked federal court jurisdiction when it consented to have this case adjudicated by a U.S. magistrate judge. However, there is nothing in 28 U.S.C. § 636(c), the statute allowing a magistrate judge to exercise such jurisdiction upon the consent of the parties, or in the "Notice, Consent, and Reference of a Civil Action to a Magistrate Judge," wherein the parties consented in this case, that suggests – let alone clearly indicates – that by consenting to magistrate judge jurisdiction to adjudicate the case, a party thereby invokes federal court jurisdiction over the claims in the case. As MDOC correctly argues, such would essentially constitute giving the magistrate judge jurisdictional powers that the district judge does not possess. Rather, "Defendant's consent to a magistrate judge merely expanded the universe of judicial officers who could decide Defendant's [summary judgment motion] on the basis of Eleventh Amendment immunity." *Bjornstrom v. State of Oregon,* No. CV 04-1877-BR, 2005 WL 1231375, at *2 (D. Ore. May 19, 2005) (finding no waiver of Eleventh Amendment immunity where defendant filed consent to magistrate judge jurisdiction before filing motion to dismiss on basis of Eleventh Amendment immunity).

Rogers also argues that MDOC made a clear declaration of its intent to submit itself to federal court jurisdiction by participating in this litigation for as long as it did before moving for summary judgment on the basis of Eleventh Amendment immunity.[6] The Fifth Circuit, under

---

[6] In what appears to be an honest miscalculation of time, Rogers incorrectly states in his brief that MDOC filed its answer "three years ago this April [of 2021]," when in fact MDOC answered the complaint two years ago in April and filed its motion for summary judgment just

similar circumstances, has rejected this very argument as follows:

> However, we have never held that a state has waived its sovereign immunity when it asserted sovereign immunity as an affirmative defense in its answer and again in its motion for summary judgment. A defendant's answer is virtually the earliest time in which it may raise such a defense. Although the state defendants did not raise their sovereign immunity in a Rule 12 motion, they nevertheless put [the plaintiff] on notice from the very beginning that they intended to move to dismiss on those grounds. In addition, they vigorously reasserted the defense in their motion for summary judgment. Under the circumstances, we cannot conclude that the state defendants engaged in "gamesmanship" or otherwise evidenced an intent to waive their sovereign immunity in this case. The district court was therefore correct to grant the state defendants' motion for summary judgment based on sovereign immunity.

*Kermode v. University of Mississippi Medical Center,* 496 Fed.Appx. 483, 489 (5th Cir. 2012).

In the present case, MDOC asserted sovereign immunity as an affirmative defense in its answers to the original and amended complaints, putting the plaintiff on notice from the very beginning that it intended to move to dismiss on those grounds, and then vigorously reasserted the defense in its motion for summary judgment. Under these circumstances, as in *Kermode,* there has been no waiver of sovereign immunity, and MDOC is entitled to summary judgment.

## Conclusion

For the above reasons, the Defendants' Motion for Summary Judgment is GRANTED. A final judgment in accordance with this order will issue forthwith.

**SO ORDERED**, this, the 4th day of June, 2021.

/s/ Roy Percy
UNITED STATES MAGISTRATE JUDGE

---

over a year-and-a-half later.